## (February 20, 1967)

■ In the Matter of LEONARD L. RIVKIN, an Attorney, Respondent. SAMUEL GREASON, Petitioner.— In this proceeding to discipline an attorney for professional misconduct, petitioner now moves to confirm in part and to disaffirm in part the report of the Justice of the Supreme Court (rendered after hearing) to whom this court had referred the proceeding, and respondent cross-moves to confirm certain conclusions set forth in the report and to dismiss the proceeding. The charges against respondent were set forth in six specifications (A to F inclusive). Under Specification A, the reporting Justice found that respondent, in instituting nine legal actions on behalf of infants, had disregarded the statutory requirement that appointments of guardians ad litem for the infants had to be procured before commencement of the actions; but concluded that this was due to inadvertence and did not constitute professional misconduct or conduct prejudicial to the administration of justice. The evidence supports the finding of violation of the statute. However, we disagree with the stated conclusion. The practice in question was a blatant disregard of the statute and was prejudicial to the administration of justice. Specification B was that respondent had knowingly set forth exaggerated medical special damages in bills of particulars in certain actions. The reporting Justice found that, in the bill of particulars on behalf of each of at least 11 clients, respondent had set forth the monetary amount in a round figure, describing it as approximate, and, in order to reach such round figure, had added to the known amount of medical bills an amount which he estimated for other medical items, the amounts of which were not yet known; and that, on behalf of each of five other clients, he had set forth such amount, again in a round figure, without the benefit of any medical bills or knowledge of what the amounts thereof would be. However, as to all the instances in question, the Justice further found that there was "no observable pattern of exaggeration of special damages," that "it is frequently difficult to obtain a current or complete medical bill from a physician prior to serving the bill of particulars, and it is next to impossible to obtain an accurate cost of medicines and drugs without reliance upon the oral word of the client"; that in none of the cases was there "any glaring discrepancy between" the amount in the bill of particulars and the actual medical bill; and that none of such "overstatements" constituted professional misconduct or conduct prejudicial to the administration of justice. Again, we are in agreement with the findings stating what the respondent did, but we do not agree with the Justice's conclusion with respect to respondent's practice of setting forth amounts of special damages in rounded-out figures, on the basis of estimates and without even stating that they are estimates, instead of setting forth the actual amounts of the damages. In our opinion, such practice may not be countenanced. Specification C was that respondent had knowingly set forth false and exaggerated claims of personal

injuries in actions on behalf of 34 clients (reduced from 35 at the hearing). The reporting Justice found that respondent had in each instance formulated his particularization upon the basis of an actual medical note or report by a physician (in almost all instances in writing), the client's own subjective complaint and respondent's own specially acquired knowledge concerning medical subjects and terminology; that none of the claims as set forth by respondent could be deemed false; and that claims on behalf of six clients did fall within the charge of exaggeration to the extent that they constituted professional misconduct, namely and variously, "probable (or possible) intracranial brain damage", "diplopia", "probable (or possible) herniated intervertebral disc", "whiplash type injury" and "cervical radiculitis"; but that none of the acts in question constituted conduct prejudicial to the administration of justice. We are in agreement with so much of these findings as are against respondent. However, we find further that respondent also, on behalf of at least 11 clients, had set forth other unfounded claims of injury, such as "cerebral concussion with post concussion syndrome", and we do not agree with the reporting Justice that, despite the absence of medical opinion that the clients sustained such injury, respondent was "within his rights in making" such claims "based upon his own medical knowledge of the subjective complaints of the clients." To condone such practice would open the door wide to assertion of medical opinions by attorneys the bounds of which would only be limited by the inventiveness of the attorneys indulging in such practice. In sum, as a matter of pattern, respondent asserted in bills of particulars injury claims which had no relationship to the injuries which the physicians had reported and which respondent could not hope to prove. Accordingly, we find that respondent was guilty, not only of professional misconduct, but also of conduct prejudicial to the administration of justice. Under Specification D, the reporting Justice made further findings with respect to three of the six clients whose bills of particulars were the basis of his finding of professional misconduct under Specification C. He found the same unwarranted exaggerated claims of personal injuries to have been represented to physicians upon their respective examinations of these three clients on behalf of the defendants in the pertinent litigations. He also found that similar unwarranted exaggerated claims were made to such physicians on behalf of three other clients of respondent's, namely, as to one client, a "possible herniated disc"; as to another, "probable intracranial brain damage"; and as to the third, "a possible herniated intervertebral disc" and "nerve root compression." We are in agreement with the learned Justice that these representations to the examining physicians constituted professional misconduct on the part of respondent. However, in our opinion such conduct, again a pattern in respondent's course of practice, also was prejudicial to the administration of justice. The patterned misconduct in the exaggeration of personal injuries in bills of particulars was here compounded and aggravated by making the same or similar exaggerated representations to the physicians. As to Specification E (permitting clients to give false testimony at pretrial examinations), we are in agreement with the reporting Justice that it was not proved. Specification F was that respondent, in applying for judicial approval of compromises of infants' actions, submitted false statements to the court, such statements falling into three different categories, namely: (1) a statement in a physician's affidavit in one case; (2) failure to include in physicians' affidavits certain injuries which the physicians had theretofore reported; and (3) failure to include in physicians' and respondent's affidavits injuries which theretofore had been claimed in bills of particulars and represented to physicians making examinations on behalf of defendants. The reporting Justice has found that category (1) was not established. The petitioner himself is in agreement with that finding and we are in accord. With respect

to category (2) the Justice found that as to such compromise matters concerning three infants the physicians' affidavits indeed did omit mention of a concussion, but that each affidavit was made some years after such injury had been reported; that, where the symptoms supporting a " provisional diagnosis of a concussion" did not persist, such diagnosis "is evidently ruled out"; and that, while it would have been better to have included a statement explaining the abandonment of the concussion claim, the failure to do does not constitute professional misconduct or conduct prejudicial to the administration of justice. We disagree with such conclusion. In our opinion, the failure to disclose all the medical facts to the court, especially where serious head injuries were at one time claimed, is professional misconduct. As to category (3), the Justice condoned the omission of the matter in question on the theory that the omissions were only of exaggerated claims in bills of particulars and in statements to defendants' physicians and that the contents of the affidavits were actually compatible with the claimants' physicians' reports. We do not agree. In our opinion the court should be made aware of any claims which had been made, as an aid in the court's evaluation of the case; and respondent's failure to honor his duty in that regard constituted professional misconduct. It is our conclusion that Specifications A, B, C and D and categories (2) and (3) of Specification F were proved. To the extent that the learned Justice's report is consistent with this conclusion, the report is confirmed; in all other respects, the report is disaffirmed. Petitioner's motion and respondent's cross motion insofar as it is with respect to the findings of the reporting Justice are disposed of accordingly. Insofar as respondent's cross motion is for dismissal of the proceeding, it is denied. In considering the nature and extent of the discipline to be imposed, we have taken cognizance of several factors in mitigation, including the absence of complaints by clients, the absence of evidence of fraud upon clients, the fact that respondent co-operated fully and completely with the Judicial Inquiry and the evidence as to respondent's integrity and capabilities. In view of all the circumstances presented, it is our opinion that respondent should be suspended from the practice of law for six months, commencing March 13, 1967. Beldock, P. J., Ughetta, Christ, Brennan and Hopkins, JJ., concur.